**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
:
LEO PINKSTON                                          :
:
                Plaintiff,      :
    v.                                                       :    Case No. 2:19-cv-13285-BRM-JAD
:
:
CITY OF JERSEY CITY, et al.,                   :
                                        :    **OPINION**
                Defendant.    :
_____:

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is a Motion filed by Defendants the City of Jersey City and James Shea (collectively, the "City" or "City Defendants"), Officer Enrique Encarnacion, Officer Alexander Ramkesoon, Officer T. Zambryzcki, Officer K. Wendolowski, Officer D. Coleman, Officer P. Egan, Sgt. S. Broderick, Officer N. Gerardi, Officer M. Cortes, Officer A. Rutkowski, Officer M. Szymanski, Sgt. C. Bereguette, Officer A. Cruz, Officer G. Icabalceta, Officer A. Roman, Officer M. Velez, Officer C. Ortiz, Officer Brazicki, Officer R. Bustamante, Officer R. Oseguera, and Officer A. Scally (collectively, "Defendant Officers" or "Individual Defendants")[1] (collectively, "Defendants") to dismiss Plaintiff Leo Pinkston's ("Pinkston") Complaint. (ECF No. 22.)[2] Pinkston filed an Opposition to the Motion. (ECF No. 26.) Having reviewed the submissions filed

---

[1] Pinkston's Complaint also asserted claims against Officers MD Kahn, Kosinski, F. Rodriguez, and Ludwig. (ECF No. 1 at 1-2.) However, those Officers are not among the movants.

[2] Pinkston's Complaint also asserted claims against Officer Labarbera, Officer Ramirez, Phillip Zacche, and Sgt. Ransom. (ECF No. 1 at 1-2.) However, on October 29, 2019, the Court dismissed claims against the above individuals pursuant to Fed. R. Civ. P. 4(m). (ECF No. 29.) Therefore, the Court will only analyze claims as they pertain to the remaining defendants.

in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter stems from an incident that occurred on June 4, 2017, where Officers Khan, Kosinski, and F. Rodriguez (the "Shooting Officers") shot at Pinkston's vehicle, wounding him in the thigh and causing him to crash into another vehicle. (ECF No. 1 ¶ 36.) Pinkston alleges none of the officers had reason to believe he was armed or dangerous. (*Id.*) Additionally, Officers Encarnacion and Ludwig (the "Observing Officers") were personally present at the scene and failed to intervene before the Shooting Officers started to shoot. (*Id.* ¶ 37.) Furthermore, Officers Zambrzycki, Wendolowski, Coleman, Egan, Morelli, Gerardi, Cortes, Scally, Labarbera, Rutkowski, Szymanski, Cruz, Ramirez, Icabalceta, Roman, Velez, Ortiz, Brazicki, Bustamante, Oseguera, M. Rodriguez, and Ramkesoon, along with Sergeants Broderick, Ransom, and Bereguette (the "Responding Officers") willfully maneuvered their vehicles in a way that was a substantial factor in causing Pinkston's vehicle to crash. (*Id.* ¶ 38.) After Pinkston crashed, the Responding Officers used excessive force in apprehending him, and they too had no reason to believe Pinkston was armed or dangerous. (*Id.* ¶ 39.) Finally, Pinkston alleges the dangerous

maneuvers and excessive force performed by the Defendant Officers were performed under the supervision of the City Defendants. (*Id.* ¶ 42.)

On August 15, 2017, Pinkston served a Notice of Claims for damages pursuant to N.J. Stat. Ann. 59:8-4. (ECF No. 1-1, Ex. A.) On May 31, 2019, Pinkston filed a twenty-count Complaint against Defendants for injuries suffered stemming from the incident. (ECF No. 1.) On September 11, 2019, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 22.) On October 11, 2019, Pinkston filed an Opposition to the Motion to Dismiss. (ECF No. 26.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

3

liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### III. DECISION

#### A. Claims Against Defendants in their Official Capacities

Defendants contend the claims against them in their official capacities should be dismissed because they are duplicative of Pinkston's claims against the City. (ECF No. 22-2 at 12.) Specifically, they argue "a lawsuit against public officers in their official capacities is functionally

a suit against the public entity that employs them." *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006).

Pinkston fails to present any substantive opposition to this argument and therefore concedes this point. *13 Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) (noting that a party's failure to oppose an argument raised in a motion to dismiss constitutes waiver of the same); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."); *Pers. v. Teamsters Local Union 863*, No. 12–2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). Accordingly, Defendants' Motion to Dismiss all claims against them in their official capacities is **GRANTED.**

**B.     Federal Law Claims**

**1.     Section 1983 Claims Against City Defendants (Counts Sixteen and Eighteen)**

Defendants contend Counts Sixteen and Eighteen must be dismissed because Pinkston fails to allege a custom or policy created by the city, or how such custom or policy is linked to any alleged constitutional violations. (ECF No. 22-2 at 24.)

"To establish valid claims under § 1983, the plaintiff must demonstrate that the defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." *Shuman ex rel Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir. 1995) (citing *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir. 1993))); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has

5

deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.").

Generally, local governments are not liable under § 1983 solely based on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Rather, municipal liability will attach "when [a municipality] causes a constitutional violation through the implementation of a policy, custom, or practice." *Wolf v. Escala*, No. 14-5985, 2015 U.S. Dist. LEXIS 65755, at *17 (D.N.J. May 20, 2015) (citing *Monell*, 436 U.S. at 691). A policy or custom can be established when: (1) "a decision maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict"; or (2) a course of conduct is "so permanent and well settled as to virtually constitute law." *Id.* Additionally, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Additionally, "in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a § 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

Establishing a failure to train claim under § 1983 is difficult. *Id.*; *City of Canton*, 489 U.S. at 387 (concluding there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a

failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Specifically, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

As such, to establish whether a municipality's alleged failure to train amounted to a deliberate or conscious choice, a plaintiff must demonstrate that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A patter of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

Here, Pinkston fails to allege the existence of any preexisting policy, custom, or practice that could form the basis of a municipal liability claim. The Complaint only states "[The City Defendants] failed to adequately supervise, discipline, and train [the Officer Defendants] in proper use of force, use of police vehicles, and arrest procedures," "failed to develop implement, promulgate, and/or train police officers regarding general orders and/or standard operating

procedures," and that the violations "were substantial factors in causing the misconduct of the Officer Defendants and the injury resulting therefrom." (ECF No. 1 ¶¶ 131-34; *see id.*, ¶¶ 142-45.) Additionally, the Complaint alleges Pinkston's "severe and permanent physical injuries" were a "direct, foreseeable, and proximate result of the said unconstitutional policy, practice, and custom of the City Defendants." (*Id.* ¶¶ 135, 146.)

Pinkston's allegations are conclusory and merely recite the elements necessary to establish a *Monell* claim. The Complaint is devoid of facts demonstrating a pre-existing policy or facts demonstrating that excessive force or unlawful vehicle pursuit issues were so pervasive and well settled in Jersey City as to constitute a custom under *Monell*.

Pinkston similarly fails to allege any facts to support a finding the City Defendants failed to train, supervise, penalize, or correct any officer's behavior. Again, the above allegations reflect nothing more than a conclusory recitation of the elements of a failure to train claim. There are no facts supporting the failure to provide any specific training or deliberate indifference to the rights of Pinkston or anyone else. Additionally, allegations of similar constitutional violations by untrained employees—which is "ordinarily necessary" to state a failure to train claim—are absent. Accordingly, Defendants' Motion to Dismiss Counts Sixteen and Eighteen is **GRANTED.**

### 2. Section 1983 Claims as to Defendant Officers

#### i. Qualified Immunity as to Defendant Officers

Defendants contend the Defendant Officers are entitled to qualified immunity from Pinkston's § 1983 claims. (ECF No. 22-2 at 27.) However, Pinkston argues the Defendant Officers are not entitled to qualified immunity because they provided "no supportive facts or evidence." (ECF No. 26 at 25.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine provides a government official immunity from suit rather than a mere defense from liability. *Id.* Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

To determine whether the Individual Defendants are entitled to qualified immunity, the Court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted).

Regarding the second requirement, "[b]ecause the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted). "An

officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*

The Court must first examine whether Plaintiffs have stated a claim for a constitutional violation. Pinkston puts forth claims of excessive force, failure to intervene, and use of vehicle in violations of Pinkston's Fourth, Fifth, and Fourteenth Amendment Rights. (ECF No. 1 ¶¶ 47-50, 75-78, 108-15.)

### a. Excessive Force against Shooting Officers (Count One)

Defendants contend Pinkston's excessive force claims under the Fourteenth Amendment must be dismissed as a matter of law. (ECF No. 22-2 at 29.) The Court agrees.

The Supreme Court has held all claims of excessive force by an officer during an arrest "should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Therefore, the motion to dismiss is granted as to Pinkston's claims under the Fourteenth Amendment for excessive force, and those claims are dismissed.

As to Pinkston's claims against the Shooting Officers alleging excessive force in violation of his Fourth Amendment Rights, Pinkston claims the Shooting Officers used excessive force in apprehending him by shooting at his vehicle "when they had no reason to believe that he was armed or dangerous." (ECF No. 1 ¶ 39.)

To allege a § 1983 claim for use of excessive force, a plaintiff must show a "seizure" occurred and that said seizure was unreasonable. *Kopec v Tate*, 361 F.3d 772, 776 (3d Cir. 2004). The Supreme Court has held the use of deadly force, "[w]here the suspect poses no immediate threat to the officer and no threat to others," is not justified. *Tennessee v. Garner*, 471 U.S. 1, 11

10

(1985). Further, when the excessive force alleged occurred in the course of an arrest, investigatory stop, or other "seizure" of a free citizen, the test of "reasonableness" used by the Court requires an assessment, under the totality of the circumstances, of whether an "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham*, 490 U.S. at 395-97. Evaluating the objective reasonableness of the police conduct "requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The Complaint alleges the Shooting Officers fired their guns at Pinkston's vehicle when they had no reason to believe Pinkston was armed or dangerous. (ECF No. 1 ¶ 36.) In viewing the facts in a light most reasonable to Pinkston, it is clear the purposeful shooting of a nonviolent suspect is unreasonable. *See Doss v. Osty*, No. 10-3497, 2011 U.S. Dist. LEXIS 68824, at *11-12 (D.N.J. June 27, 2011) (denying a motion to dismiss an excessive force claim where plaintiff alleged defendant officers unreasonably used deadly force in apprehending him). Therefore, Pinkston has properly stated a § 1983 claim of excessive force against the Shooting Officers. Additionally, the unreasonable use of deadly force constitutes a violation of a clearly established right. *Id.* at *12. As such, the Shooting Officers are not entitled to qualified immunity. Accordingly, Defendants' Motion to Dismiss Count One of the Complaint is **DENIED.**

            **b.**  **Excessive Force Against All Officers (Count Seven)**

Defendants contend Count Seven of the Complaint should be dismissed as to Defendant Officers because (1) excessive force claims should not be analyzed under the Fourteenth Amendment, and (2) the Defendant Officers are immune from liability. (ECF No. 22-2 at 27-29.)

The Supreme Court has held all claims of excessive force by an officer during an arrest "should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." *Graham*, 490 U.S at 395. Therefore, once again, Pinkston's claims under the Fourteenth Amendment for excessive force against the Defendant Officers is dismissed.

Further, Defendants contend Pinkston has not plead a Fourth Amendment violation because "there was a lawful use of force to arrest and imprison [him]." (ECF No. 22-2 at 27.) As such, Defendants claim they are entitled to qualified immunity.

To allege a § 1983 claim for use of excessive force, a plaintiff must show a "seizure" occurred and that said seizure was unreasonable. *Kopec v Tate*, 361 F.3d 772, 776 (3d Cir. 2004). An "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham*, 490 U.S. at 395-97.

In Count Seven of the Complaint, Pinkston claims the Defendant Officers—in apprehending him—used excessive force "in an amount out of proportion to the amount which a reasonable officer would have used under similar circumstances." (ECF No. 1 ¶ 76.)

Specifically, Pinkston alleges the Defendant Officers "willfully maneuvered their vehicles in a manner that was a substantial factor in causing [Pinkston's vehicle] to crash." (ECF No. 1 ¶ 38.) Additionally, following the crash, Pinkston's vehicle became "engulfed in flames, at which time [the Defendant Officers] utilized excessive force in the process of apprehending [Pinkston] when they had no reason to believe he was armed or dangerous." (*Id.* ¶ 39.)

Based on the above, Pinkston has adequately stated an excessive force claim against the Defendant Officers. As stated above, to determine whether officers are reasonable in their use of

12

force, a court must examine the specific circumstances surrounding the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Pinkston alleges the Defendant Officers apprehended him using lethal vehicular maneuvers that caused him to crash. (*See* ECF No. 1 ¶¶ 38-39.) Indeed, the use of deadly force is unreasonable in a situation such as here where the Defendant Officers had "no reason to believe Pinkston was armed or dangerous." (*Id.*); *Doss*, 2011 U.S. Dist. LEXIS 68824, at *11-12.

Furthermore, the right to be free from excessive force during an arrest is well established. *See O'Donnell v. Tinicum Twp.*, 110 F. Supp. 3d 571, 578 (E.D. Pa. June 11, 2015) (citing *Graham*, 490 U.S. at 394-95). Indeed, the Third Circuit has found that an officer who fails to apply the above factors reasonably is not entitled to qualified immunity. *See Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005). Based on the Complaint, none of the Defendant Officers could have reasonably believed their conduct was permissible under the existing precedent. As such, the Defendant Officers are not entitled to qualified immunity because they violated a clearly established constitutional right. Accordingly, Defendants' Motion to Dismiss Count Seven of the Complaint is **DENIED.**

### c. Failure to Intervene against Shooting/Observing Officers (Count Two)

Pinkston next brings claims against the Shooting and Observing Officers for failure to intervene when the Shooting Officers "use[d] excessive force against [Pinkston] by draw[ing] their guns at shoot[ing] at him." (ECF No. 1 ¶ 54.) To state a claim for failure to intervene, a plaintiff "must demonstrate that the defendants: (1) observed or had knowledge that a constitutional violation was taking place, yet failed to intervene; and (2) had a reasonable and realistic

opportunity to intervene." *Monticciolo v. Robertson*, 15-8134, 2017 U.S. Dist. LEXIS 167895, at *18 (D.N.J. Oct. 11, 2017).

Pinkston has adequately alleged a constitutional violation for excessive force by the Shooting Officers. *See supra* Sect. III. a. Pinkston further alleges the Observing Officers were present when the violation took place and—despite the reasonable opportunity—did not intervene. (ECF No. 1 ¶¶ 53-54.) Taken together, Pinkston's allegations satisfy the elements to plead a failure to intervene claim. Accordingly, Defendants' Motion to Dismiss Count Two of the Complaint is **DENIED.**

          **d.**       **Failure to Intervene against All Officers (Count Eight)**

Additionally, Pinkston alleges a claim against Defendant Officers for failure to intervene on the excessive force used in Pinkston's apprehension. However, Pinkston does not allege the Defendant Officers actually observed a constitutional violation. Pinkston simply alleges Defendant Officers "had a duty to intervene to prevent the use of excessive force by a fellow officer." (ECF No. 1 ¶ 81.) Therefore, Pinkston has failed to allege a constitutional violation and, as such, Defendant Officers are entitled to qualified immunity. Accordingly, Defendants' Motion to Dismiss Count Eight of the Complaint is **GRANTED.**

          **ii.**       **Section 1983 Due Process Violations (Count Thirteen)**

Defendants contend Count Thirteen of the Complaint should be dismissed because (1) the Defendant Officers cannot be held liable under the Fifth Amendment, and (2) Pinkston has failed to demonstrate the Defendant Officers' conduct "shocks the conscience." (ECF No. 22-2 at 21.)

Count Thirteen of the Complaint alleges a due process violation under the Fifth and Fourteenth Amendments for the Defendant Officers' unreasonable and intentional use of their vehicles in apprehending Pinkston. (ECF No. 1 ¶¶ 108-15.)

First, Defendants contend Pinkston fails to plead a Fifth Amendment violation because the Defendant Officers are local government actors, and therefore precluded from liability under the Fifth Amendment. (ECF No. 22-2 at 28.)

It is well-established that the Fifth Amendment only applies to actions taken by the federal government. *See Citizens for Health v. Leavitt*, 428 F.3d 167, 178 (3d Cir. 2005); *see also McField v. Phila Hous. Auth.*, 992 F. Supp. 2d 481, 492 (E.D. Pa. 2014)). Because Pinkston brings these claims against only state actors and not the federal government, his § 1983 claim for violation of rights under the Fifth Amendment fails.

However, Pinkston also asserts a substantive due process claim in violation of his Fourteenth Amendment Rights. The Supreme Court has held officer misconduct during a vehicular pursuit may constitute a violation of substantive due process where the officer's conduct is arbitrary and "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). To state a claim for this type of violation, a plaintiff must demonstrate that the purpose of the officer's conduct was to cause harm unrelated to the legitimate object of arrest. *Id.* A pursuing officer must balance "on one hand the need to stop a suspect . . . and, on the other, the high-speed threat to all those within stopping range, be the suspects, their passengers, other drivers, or bystanders." *Lewis*, 523 U.S. at 853.

Here, Pinkston adequately alleges the Defendant Officers intended to injure him during the pursuit. He claims the Defendant Officers "purposely drove behind [him] at so short a distance from his vehicle and at so high a speed that [the Defendant Officers] made it impossible for [Pinkston] to avoid a collision." (ECF No. 1 ¶ 110.) Additionally, Pinkston alleges the Defendant Officers "intended to harm" him and "were motivated by this intention" when they performed their "lethal maneuver." (*Id.* ¶ 112.) Taking these facts in the light most favorable to Pinkston, he has

15

adequately stated a claim for a due process violation. Accordingly, Defendants' Motion to Dismiss Count Thirteen of the Complaint is **DENIED.**

### C. State Law Claims

#### 1. NJCRA Claims

Defendants contend Pinkston's NJCRA claims (Counts Three, Four, Nine, Ten, Fourteen, Seventeen, and Nineteen) should be dismissed because they are duplicative to his § 1983 claims (Counts One, Two, Seven, Eight, Thirteen, Sixteen, and Eighteen, respectively). (ECF No. 22-2 at 26.) Indeed, "New Jersey Courts interpret the NJCRA as analogous to § 1983." *Ingram v. Twp. Of Deptford*, 911 F.2d 289, 298 (D.N.J. 2012). While this does not necessitate the dismissal of NJCRA claims that are analogous to § 1983 claims, it does necessitate the same analysis to be performed. Here, Pinkston's NJCRA claims are identical to their § 1983 pairs. Additionally, Defendants offer no additional arguments—outside their arguments for the dismissal of the analogous § 1983 claims—for why the NJCRA claims should be dismissed. In the interest of judicial economy, the Court refers to its above analysis of Pinkston's § 1983 claims and will rule on the analogous NJCRA claims accordingly. *See e.g.*, *Janowski v. City. of N. Wildwood*, 259 F. Supp. 3d 113, 128 (D.N.J. 2017) (interpreting NJCRA municipal liability claims consistently with § 1983); *Geissler v. City of Atlantic City*, 198 F. Supp. 3d 389, 396 (D.N.J. 2016) (same); *Prunkel v. Cty. of Bergen*, 2018 U.S. Dist. LEXIS 14973, at * 14 (D.N.J. Aug. 23, 2018) (analyzing NJCRA qualified immunity challenges, failure to intervene claims, and excessive force claims consistently with § 1983). Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Counts Ten, Seventeen, and Nineteen, and **DENIED** as to Counts Three, Four, Nine, and Fourteen.

#### 2. Assault and Battery (Count Five)

16

Pinkston brings a claim of assault and battery against Jersey City and the Shooting Officers. (ECF No. 1 ¶¶ 67-70.) Defendants only object to this claim as it pertains to Jersey City. (ECF No. 22-2 at 16.) Specifically, Defendants contend Pinkston may not assert a claim of assault and battery against the City of Jersey City because a municipality cannot be held liable for their employee's intentional torts. (*Id.*) Pinkston does not dispute this.

New Jersey law provides "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Rev. 59:2-10. New Jersey Courts have made clear that a municipality cannot be vicariously liable for the intentional torts of its employees. *See Soto v. City of Newark*, 72 F. Supp. 2d 489 (D.N.J. 1999) (finding a city could not be liable for employee's intentional infliction of emotional distress); *McDonough v. Jorda*, 519 A.2d 874 (N.J. Sup. Ct. App. Div. 1986) (finding a municipality could not be liable for assault and battery by one of its police officers). Here, Pinkston may not assert a claim of assault and battery against the City of Jersey City because the claim is based solely on the intentional acts of the Shooting Officers. (ECF No. 1 ¶¶ 67-70.) Accordingly, Defendants' Motion to Dismiss Count Five as to the City of Jersey City is **GRANTED.**

### 3. Negligence (Counts Six and Twenty)

Next Pinkston asserts the following negligence claims: (1) a negligence claim against the Shooting Officers and Jersey City (Count Six), (2) a negligence claim against Defendant Officers (Count Eleven), and (3) a negligence claim against Defendant Officers and City Defendants (Count Twenty). Defendants contend Counts Six and Twenty should be dismissed because "Defendants are immune from liability for any alleged negligence pursuant to N.J.S.A. 59:5-2b." (ECF No. 22-2 at 17.)

Importantly, N.J.S.A. 59:5-2(b)(2) states that public entities and employees are not liable for an injury caused by "a person evading arrest." N.J. Stat. Ann. § 59:5-2(b)(2). This immunity, known as "pursuit immunity," is absolute absent "willful misconduct." *Gardner v. N.J. State Police*, No. 15-8982, 2018 U.S. Dist. LEXIS 184419, at *50 (D.N.J. Oct. 29, 2018) (citing *Alston v. Cty. of Camden*, 773 A.2d 693, 697 (N.J. 2001)). Willful misconduct falls "somewhere on the continuum between simple negligence and intentional infliction of harm." *Alston*, 773 A.2d at 697. Although willful misconduct need not involve actual intent to cause harm, "there must be some knowledge that the act is wrongful." *Fielder v. Stonack*, 661 A.2d 231, 242 (N.J. 1995). Willful misconduct in a police vehicular chase has two elements: 1) disobeying either a specific lawful command of a superior or a specific lawful standing order and 2) knowing of the command or standing order, knowing that it is being violated and, intending to violate it. *Id.* at 243.

Pinkston's first negligence claim, Count Six, seeks relief because the Shooting Officers negligently drew, aimed, and fired their guns" in his direction while he was operating a motor vehicle, foreseeably causing him to sustain bodily injury. (ECF No. 1 ¶ 72.) Additionally, Count Twenty seeks relief because Defendant Officers "operated their vehicles in a careless, negligent, and palpably unreasonable manner." (*Id.* ¶ 153.)

Here, N.J. Stat. Ann. 59:5-2(b)(2) immunizes Defendants from Count Six. If Pinkston's "injuries were merely the product of [Defendants'] negligence in pursuing and arresting Plaintiff, then it cannot be said" they exhibited willful misconduct. *Gardner*, 2018 U.S. Dist. LEXIS 184419, at *51 (citing *Brittingham v. Cty. of Camden*, No. 07-190, 2009 U.S. Dist. LEXIS, at *11 (D.N.J. May 18, 2009) (dismissing negligence claim against an officer who shot plaintiff, while still allowing assault/battery claim to proceed against the officer); *see also Mendelson v. Reyes*, No. 16-4831, 2017 U.S. Dist. LEXIS 28315, at *4 (D.N.J. Feb. 28, 2017) (dismissing negligence

claims against officers under pursuit immunity). Additionally, Pinkston does not allege Defendants committed "a knowing violation of a specific command by a superior, or a standing order, that would subject them to discipline." *Fielder v. Stonack*, 661 A.2d 231, 243 (N.J. 1995) (holding that "in the context of a police officer's enforcement of the law, including the pursuit of a fleeing vehicle, willful misconduct is ordinarily limited to" such circumstances). Accordingly, Defendants' Motion to Dismiss Counts Six is **GRANTED.**

However, pursuit immunity does not protect Defendants from the allegations in Count Twenty of the Complaint. Here, Pinkston alleges the Defendant Officers were aware they did not have justification for performing their vehicular maneuvers because they were in "violation of general orders of the Jersey City Police Department and directives and guidelines of the New Jersey Attorney General." (ECF No. 1 ¶ 101.) As such, Pinkston has adequately alleged the existence of a standing order, Defendant Officers' knowledge of said order, and Defendant Officers' knowing violation of that order. Accordingly, Defendants' Motion to Dismiss Count Twenty of the Complaint is **DENIED.**

### 4.     New Jersey Tort Claims Act (Counts Fifteen)

Finally, Pinkston asserts two claims under the New Jersey Tort Claims Act ("NJTCA"). Count Twelve seeks liability from Defendant Officers for their dangerous vehicular pursuit and Count Fifteen seeks liability from the City Defendants for failure to supervise Defendant Officers and implement a reasonable vehicular pursuit policy. (ECF No. 1 ¶¶ 99-107, 124-29.)[3] Defendants

---

[3] In Count Twenty, Plaintiff claims that, because of the misconduct of "Defendants Township of Irvington, Tracy Bowers . . . Plaintiff Mark Spivey's vehicle was struck." (ECF No. 1 ¶ 129.) As none of these parties are mentioned anywhere else in the Complaint, the Court assumes this was a mistake.

contend Count Fifteen should be dismissed as to Jersey City because a public entity cannot be held liable for an employee's intentional torts. (ECF No. 22-2 at 15-16.)

A public entity is immune to liability stemming from willful misconduct of its employees. *See Kowalsky v. Long Beach Twp.*, 72 F.3d 385 (3d Cir. 1995). Defendants contend Jersey City should similarly be immune to claims stemming from Phillip Zacche and James Shea's alleged failure to supervise Defendant Officers and implement vehicular pursuit policies. The Court disagrees.

Courts have consistently rejected Jersey City's argument that the NJTCA bars liability for negligent supervision in the face of an employee's willful conduct. *See V.A. v. N.J. Nat'l Guard Youth Challenge Program*, No. 06-347, 2007 U.S. Dist. LEXIS 49288, at * 9 (D.N.J. July 9, 2007) (citing cases). Indeed, Jersey City may be liable for the supervision of Zacche and Shea even though it is immune from vicarious liability under *respondeat superior*. *Id.* at 12. Accordingly, Defendants' Motion to Dismiss Count Fifteen of the Complaint is **DENIED.**

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** with regards to Counts Five, Six, Eight, Ten, Sixteen, Seventeen, Eighteen, and Nineteen, and **DENIED** with regards to Counts One, Two, Three, Four, Seven, Nine, Thirteen, Fourteen, Fifteen, and Twenty. An appropriate order will follow.

**Date: July 24, 2020**                              */s/ Brian R. Martinotti*
                                                     **HON. BRIAN R. MARTINOTTI**
                                                     **UNITED STATES DISTRICT JUDGE**