UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LEO PINKSTON,

        *Plaintiff,*

    v.

CITY OF JERSEY CITY et al.,

       *Defendants.*

Civil Action No. 19-cv-
13285(MEF)(JSA)

**OPINION and ORDER**

Police officers tried to stop a car and the driver kept going;
police gave chase, and certain officers eventually fired on the
car, injuring the driver.

The driver sued various police officers and supervisory
officials, and the city that employed them.

The city and one of the officials now move for summary judgment.

As to the city, the motion is granted.  As to the official, the
Court declines to exercise jurisdiction.

**I.**   **Background**

    **A.**   **Evidence**

On June 4, 2017, Jersey City police officers tried to stop a
car.  See Defendants' Statement of Undisputed Material Facts ¶¶
1-4.  The car did not stop.  See id. at ¶¶ 3-4, 8.  Various
officers then chased the car through the city's streets.  See
id. at ¶¶ 7-9.  At times, the chase involved fifteen police
cars.  See Plaintiff's Counter Statement of Material Facts,
Exhibit A, Troy E. Oswald Expert Report ("Oswald Report") in the
matter of Feliz-Rodriguez v. City of Jersey City et al. at 6, 8-

11.[1]  Three police officers fired at the car.  See Defendants'
Statement of Undisputed Material Facts ¶ 38; Plaintiff's Counter
Statement of Material Facts ¶ 38.  The driver was injured.  See
Defendants' Statement of Undisputed Material Facts ¶ 17.

   B.   **Procedural History**

The driver initiated this lawsuit.  He is referred to from here
as "the Plaintiff."[2]

The Plaintiff's lawsuit was initially brought against Jersey
City ("City"), certain senior City public safety officials, and
more than 25 members of the City's police force.

A motion to dismiss was filed, and in July of 2020 the Court
dismissed some of the Plaintiff's claims.[3]

Discovery was undertaken, and in April of 2023 motions for
summary judgment were made by all remaining defendants on all
remaining claims.

A month later, during May of 2023, the case was reassigned to
the undersigned.

After oral argument, and some post-argument briefing, the Court
dismissed many of the Plaintiff's remaining claims.

First, the Court dismissed the remaining claims against the
individual police officer defendants.  See Orders (September 22,
2023 and September 26, 2023).[4]

_____

[1] At oral argument during September of 2023, the defendants
agreed that factual statements in the Oswald Report could be
relied on here.

[2] The Plaintiff is Leo Pinkston.

[3] Other claims were dismissed at other points, for reasons not
related to the merits.  Take, for example, the three police
officers who shot at the car.  See Part I.A.  Service was not
perfected by the Plaintiff as to two of them, and so the case
against them was dismissed.  See Order (October 30, 2019).  As
to the third, the Clerk of the Court filed an entry of default
for failure to defend.  See Entry of Default (September 18,
2019).

[4] These claims were dismissed without opposition from the
Plaintiff.

And second, the Court dismissed a claim that had been pressed against the City and one of the City's senior public safety officials ("Public Safety Official"[5]).  See Order (September 26, 2023).[6]

All of this has left behind one claim in the case.  It runs against both the City and the Public Safety Official.

As to this claim, the City and the Public Safety Official (collectively, "the Defendants") have moved for summary judgment.

On September 21, 2023, the motion became fully submitted.[7]

It is now before the Court.

### C.   The Motion

As noted, one claim remains in this case.  It is a state law claim, for negligent supervision and training by the Defendants of the police officers involved in the June 2017 chase.

The Plaintiff's basic argument: the Attorney General of New Jersey has issued guidelines as to how officers must conduct a police pursuit, see Complaint at ¶ 127; the police officers here were not adequately trained by the Defendants on the guidelines, see id. ¶ 126; and had they been, the Plaintiff would not have been shot and injured, see id. ¶ 128-29.

The Defendants' core response: the New Jersey Tort Claims Act establishes an immunity that bars any recovery here, and summary judgment must therefore be granted.  See Defendants' Brief at 6.

The Court analyzes the summary judgment motion below, defendant by defendant.  Part II focuses on the City, and Part III considers the Public Safety Official.  Part IV is a brief conclusion.

------------------------------------------

[5]  The Public Safety Official is James Shea.

[6]  This claim was also dismissed without opposition from the Plaintiff.

[7]  The motion became fully submitted when the deadline passed for the Plaintiff to respond to the Defendants' last filing.

## II.   **The City**

### A.   **Jurisdiction**[8]

When this case was filed, there were federal law claims and state law claims.   See Complaint ¶¶ 47-155.

The Court had subject matter jurisdiction over the federal claims based on the federal question jurisdiction statute.   See 28 U.S.C. § 1331.[9]   And it had jurisdiction over the state claims based on the supplemental jurisdiction statute.   See 28 U.S.C. § 1367.[10]

The federal claims against the City were all dismissed.   See Order (July 24, 2020).   As noted, a state law claim against the City (and the Public Safety Official), for negligent training and supervision, is all that is left in the case.   See Part I.B.

The Court of Appeals has held that "where the claim over which the district court has original jurisdiction is dismissed before

---

[8]   Two things.   First, neither party argues there is a jurisdictional issue.   But the Court has an independent obligation to assess whether it has jurisdiction.   See, e.g., Hartig Drug Co. Inc. v. Senju Pharm. Co., 836 F.3d 261, 267 (3d Cir. 2016); see also footnote 11.   Second, the City does not argue there is an Eleventh Amendment bar to proceeding against it here.   See generally Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984); Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006).   Courts are not required to raise such issues sua sponte.   See Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 418 (3d Cir. 2003). The Court therefore does not consider any possible Eleventh Amendment issue.

[9]   The statute, in relevant part: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[10]   The statute, in relevant part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

trial," Hedges v. Musco, 204 F.3d 109, 123 (3rd Cir. 2000), as
here, "the district court must decline to decide the . . . state
claim[] unless considerations of judicial economy, convenience,
and fairness to the parties provide an affirmative justification
for doing so." Hedges, 204 F.3d at 123 (emphasis in original,
cleand up).[11]

Here, retaining jurisdiction over the state law claim as to the
City is "affirmative[ly] justifi[ed]."

First, the basic question here is: does a state immunity statute
prevent recovery against the City on the Plaintiff's state law
claim?  That question is ready to be answered.  The Plaintiff
and the City have worked to tee it up.  They have filed their
papers.  They have participated in oral argument.  There is
nothing left for them to do.  It is plainly "convenien[t] . . .
to the parties," id., and "fair" to them, id., for the Court to
now rule on the immunity issue.  Indeed, the Plaintiff and the
City have each stated that they want the Court to retain
jurisdiction.  See Oral Argument Transcript (September 13,
2023).

Second, as to the state immunity law, the New Jersey Supreme
Court has issued an on-point decision.  (See below, Part II.B.)
That decision is controlling here.[12]  And it would be controlling
in state court.[13]

---

[11] The Court must actively determine whether to continue to
exercise jurisdiction over a remaining state law claim after all
federal claims have been dismissed.  See, e.g., United States v.
Omnicare, Inc., 903 F.3d 78, 94 (3d Cir. 2018).

[12] "A federal district court . . . exercising supplemental
jurisdiction over state law causes of action must apply the
applicable substantive law of the State as interpreted by the
State's highest court."  Doe v. Div. of Youth & Fam. Servs., 148
F. Supp. 2d 462, 502 (D.N.J. 2001); accord, e.g., Hamilton v.
Roth, 624 F.2d 1204, 1210-12 (3d Cir. 1980); see also Schulman
v. Zoetis, Inc., 2023 WL 4539476, at *1 (D.N.J. July 14, 2023);
17A Moore's Federal Practice – Civil § 124.01 (2023).

[13] See, e.g., State v. Sheppard, 125 N.J. Super. 332, 335 (App.
Div. 1973) ("It is elementary that a Supreme Court opinion
construing a statute is binding on all lower courts so long as
the statute remains unchanged.  The Supreme Court has observed:
'Trial judges are privileged to disagree with the pronouncements

Against this backdrop, it makes sense from a "judicial economy" perspective, Hedges, 204 F.3d at 123, for the Court to now exercise jurisdiction over the state law claim.  If the Court does not do so, a new lawsuit could be filed, this time in state court, and the state law claim already at issue in this case would be raised in that one.  But to what end?  The claim would be resolved there (in state court) just as it would have been resolved here (in federal court) --- in accord with the New Jersey Supreme Court's controlling decision.  Same result.  But two courts to get there instead of one.  That would not be "judicial economy."

A third and final reason for this Court to keep jurisdiction is based on the supplemental jurisdiction statute.

When a state law question is novel or complex, that can be a reason for the federal court to decline jurisdiction.  See 28 U.S.C. § 1367(c)(1).  And the converse, though unstated in the statute, makes sense, too.  Namely: when a state law question is directly controlled by on-point precedent, that can be a reason for the federal court to exercise jurisdiction.

As one leading commentator has put it: "retention of a state-law claim is appropriate if the correct disposition of the claim is so clear as a matter of state law that it can be determined without  . . . entanglement with any difficult issues of state law."  15A Moore's Federal Practice - Civil § 106.66 (2023).

This is consistent with the views of numerous federal courts.  See, e.g., Bishop v. Cnty. of Macon, 620 F. App'x 148, 150 (4th Cir. 2015); Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1141 (8th Cir. 2014); Mauro v. Southern New England Telecomms., Inc., 208 F.3d 384, 388 (2d Cir. 2000); Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir. 1993);

---

of appellate courts; the privilege does not extend to non-compliance.'") (quoting Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415 (1961)); see also State v. Olenowski, 253 N.J. 133, 152 (2023) ("Courts are bound to adhere to settled precedent under the principle of stare decisis.") (cleaned up); State v. Rose, 206 N.J. 141, 183 (2011) ("[T]he legal . . . determinations of a high court's considered analysis must be accorded conclusive weight by lower courts.").

Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 (2d Cir. 1990).[14]

In sum: the Court will retain jurisdiction here and decide the remaining state law claim against the City.  Doing so is "affirmativ[ly] justifi[ed]."  Hedges, 204 F.3d at 123.  It is "convenien[t]" and "fair[]" to the parties."  Id.  It serves the interests of "judicial economy."  Id.  And it accords with the supplemental jurisdiction statute.

### B.   Merits

As noted above, the City argues the Plaintiff's negligent training and supervision claim is foreclosed by a New Jersey immunity statute.  See Defendant's Brief at 6.

The statute reads in relevant part:

> [A] public entity . . .  is [not] liable for . . . any injury caused by . . . a law enforcement officer's pursuit of a person.

N.J. Stat. Ann. § 59:5-2(c).[15]

Were the events at issue in this case a "pursuit of a person" by "law enforcement officer[s]"?

If yes, the immunity applies.  If no, it does not.

---

[14] This approach makes sense.  The law in this area is based, in part, on a concern for comity between federal and state courts.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726–27 (1966).  When there are open state law questions, comity weighs in favor of the federal court declining jurisdiction.  It is generally for state courts, not federal courts, to develop state law in the first instance.  When there are not open state law legal questions, comity weighs in favor of the federal court exercising jurisdiction.  State courts have crowded dockets of their own, and they follow binding state precedents just as the federal courts do.  (See footnotes 12 and 13.)  There is little practical reason for a federal court to push off a claim to a busy state court, only so the state court can then enter a foreordained decision.  That would not be comity.

[15] This section of the statute establishes what the New Jersey Supreme Court has called "pursuit immunity."  Alston v. City of Camden, 168 N.J. 170, 177 (2001).

This is a question of New Jersey law.  For determining New Jersey law, "the decisions of the [New Jersey] Supreme Court are the authoritative source." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).  If the New Jersey Supreme Court has issued a "controlling decision," Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022), the federal court's work is done.  It must apply the decision.  See id.; see generally Wainwright v. Goode, 464 U.S. 78, 84 (1983) ("the views of the state's highest court with respect to state law are binding on the federal courts").

The New Jersey Supreme Court has issued a "controlling decision."  It has held that "pursuit immunity"[16] "clearly cover[s] the ordinary situation of the driver who is obviously eluding a police officer[.]" Tice v. Cramer, 133 N.J. 347, 361 (1993).

That is this case.  Police tried to stop a driver.  See Defendants' Statement of Undisputed Material Facts ¶¶ 3-4.  He kept going.  See id. at ¶¶ 3-4, 8.  The driver was chased through the streets of Jersey City, "obviously eluding" police. Tice, 133 N.J. at 377.  Indeed, at various times, as many as fifteen police cars were involved in trying to stop the driver. See Oswald Report at 6, 8-11.

In short: pursuit immunity applies.

Does it shield the City from liability?  Yes.

In Tice, a New Jersey Supreme Court case, a police officer chased a fleeing suspect and the chase ended in a fatal crash. See Tice, 133 N.J. at 351-52.  The estate of the deceased sued the municipality that employed the police officer.  The theory of liability:  the municipality had been negligent in its training of the officer.  See id. at 352.

The Supreme Court's holding: the pursuit immunity enacted by the New Jersey legislature categorically barred the claim against the municipality.  See id. at 366-67 ("[F]ailure to train . . . liability is precluded by [the statute] . . . because [the statute] directly immunizes the [municipality]").[17]

---

[16] See footnote fifteen.

[17] Recall the statute, which directs that when pursuit immunity applies, "a public entity . . . is [not] liable for . . . any injury[.]"  N.J. Stat. Ann. §§ 59:5-2(c).

<u>Tice</u> emphasized:

> [The statute] immunizes the City not only for any
> respondeat superior liability <u>but for liability on any
> theory</u>, including a theory that asserts independent
> negligence apart from respondeat superior.

<u>Id</u>. at 354 (emphasis added); <u>see also</u>, <u>e.g.</u>, <u>id</u>. at 363.

<u>Tice</u> is a "controlling decision." <u>Popa</u>, 52 F.4th at 125.  And
where pursuit immunity applies, as here, <u>Tice</u> does not leave
room for "liability [against a municipality] on <u>any</u> [state law
negligence] theory." <u>Tice</u>, 133 N.J. at 354 (emphasis added).
Therefore, <u>Tice</u> requires dismissal of the Plaintiff's negligent
training and supervision claim.[18]

## III.  **The Public Safety Official**

Take now the negligent failure to train and supervise claim as
it runs against the Public Safety Official.  <u>See</u> Complaint ¶¶
124-29.

This is the same claim that was pressed against the City.  And
like the claim against the City, the federal claim that had
provided "original jurisdiction" was previously dismissed.  <u>See</u>
Part II.A.

But there is one difference, and it is telling.

---

[18] <u>Accord</u>, <u>e.g.</u>, <u>Alston</u>, 168 N.J. 170 (relying on <u>Tice</u> to dismiss
negligent training claim against municipality); <u>Chipepo</u> v.
<u>State</u>, 2018 WL 5985992, at *6 (N.J. Super. Ct. App. Div. Nov.
15, 2018) (relying on <u>Tice</u> to dismiss negligent training claim
against state); <u>Roach</u> v. <u>New Jersey State Parole Bd.</u>, 2018 WL
1220673, at *5 (N.J. Super. Ct. App. Div. Mar. 9, 2018) (relying
on <u>Tice</u> to dismiss negligent training and supervision claim
against state parole board, state department of corrections);
<u>see also</u>, <u>e.g.</u>, <u>Torres</u> v. <u>Monmouth County Correctional
Institution et al.</u>, 2021 WL 3773687, at *8 (D.N.J. Aug. 25,
2021) (relying on <u>Tice</u> to dismiss negligent training and
supervision claim against county and county correctional
facility); <u>Bryan</u> v. <u>Ocean Cnty.</u>, 2020 WL 1873019, at *6 (D.N.J.
Apr. 15, 2020) (relying on <u>Tice</u> to dismiss negligent training
and supervision claim against county); <u>Est. of King</u> v. <u>City of
Jersey City</u>, 2018 WL 3201793, at *7 (D.N.J. June 29, 2018)
(relying on <u>Tice</u> to dismiss negligent training and supervision
claim against municipality).

Pursuit immunity bars the negligent training and supervision claim against the City. There is a "controlling decision" of the New Jersey Supreme Court that says so. See Part II.B.

But there is no "controlling decision" as to whether pursuit immunity bars a negligent training and supervision claim against an off-site official, such as the Public Safety Official.

Therefore, this Court would need to predict how the New Jersey Supreme Court would answer that question. See Spence, 623 F.3d at 216.

But here, it would be hard to be sure of an accurate prediction.

First, some of the key sources for predicting what the New Jersey Supreme Court might do are on-point decisions of intermediate New Jersey appellate courts. See Schulman, 2023 WL 4539476, at *2 (quoting Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000)). But there do not appear to be any such decisions, and the parties have not cited any.

Second, another basis for prediction: on-point decisions of federal courts applying New Jersey law. See Schulman, 2023 WL 4539476 at *6 (quoting Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 406 (3d Cir. 2000)). But again: there do not seem to be any, and the parties have not pointed any out.

Third, another basis for prediction is the New Jersey Supreme Court's reasoning in relevant cases. See Schulman, 2023 WL 4539476, at *2-5. In this area, the New Jersey Supreme Court has focused on the practical impact of liability on the decision-making of officers who have to make on-the-spot choices during a pursuit. See Alston, 168 N.J. at 178, 182-83; Fielder v. Stonack, 141 N.J. 101, 114-15 (1995); Tice, 133 N.J. at 363; cf. id. at 367. This concern may potentially be less relevant as to the Public Safety Official, an off-site supervisor sued on the basis of alleged programmatic flaws in the City's police training. See Complaint ¶ 34. But the cited cases do not shed enough light on how this possible distinction might or might not ultimately be viewed by the New Jersey Supreme Court.

A fourth way to try to predict what the Supreme Court of New Jersey will do in a given circumstance is to start with the relevant legal materials, and then analyze them using the interpretive methodology the New Jersey Supreme Court has laid down. See Schulman, 2023 WL 4539476 at *2-5.

This can be straightforward.  Sometimes, for example, a state statute is in play and the state Supreme Court has directed that it be given its ordinary public meaning.  In that context, the federal court's prediction process begins from a familiar set of starting blocks.  Cf. Bostock v. Clayton Cnty., Georgia, 140 S. Ct. 1731, 1738 (2020) ("[t]his Court normally interprets a statute in accord with the ordinary public meaning of its terms").

But when it comes to setting the scope of pursuit immunity, the Supreme Court of New Jersey has not focused solely on the text of the relevant statute.  Rather, the Supreme Court has indicated that the weighing of public policy concerns is a "polestar" of its analysis.  Alston, 168 N.J. at 178 (citing Fielder, 141 N.J. at 120); accord Tice, 133 N.J. at 365.

Such policy-focused analysis can be challenging.  It requires a balance to be struck between competing concerns.  And it can be especially challenging to predict how another court would resolve a policy-focused question --- and all the more so for federal courts, which generally do not have "the expertise . . . to make policy judgments."  Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 538 (2012).

In short, the New Jersey law question here is novel and complex. Novel, because the New Jersey Supreme Court has not directly addressed it.  And complex, because there are not substantial-enough guideposts to allow for a confident prediction by this Court as to how the New Jersey Supreme Court would resolve the question.

Where a claim turns on a "novel or complex" state law question, a federal court may decline to exercise supplemental jurisdiction over the claim. See 28 U.S.C. § 1367(c)(1).

That is what that Court will do here.

This is consistent with the approach this Court has previously taken.  See Black v. Twp. of S. Orange, 2014 WL 4755506, at *9 (D.N.J. Sept. 23, 2014) (declining to exercise supplemental jurisdiction over a state law negligent training and supervision claim in part because the question of "whether pursuit immunity extends to the actions of [an off-site police supervisor] may be an issue of first impression" under New Jersey law).

The judgments about state law that are at issue here should be made in the first instance by the state courts.  See, e.g., K.P. v. Corsey, 77 F. App'x 611, 612–14 (3d Cir. 2003) (holding that

the District Court's retention of jurisdiction was improper when the relevant state law question was open, and "implicate[d] both legal and public policy concerns"); see also Wentzka v. Gellman, 991 F.2d 423, 424 (7th Cir. 1993).[19]

## IV.  Conclusion

The Court grants the City's summary judgment motion, and declines to exercise jurisdiction over the Public Safety Official's summary judgment motion.

DATE:  October 18, 2023                    _____
                                           Michael E. Farbiarz, U.S.D.J.

---

[19] Two points bear mention.  First, the discovery here can be put to use.  Documents obtained here and depositions taken here can be used in state court.  See Annulli v. Panikkar, 200 F.3d 189, 204 (3d Cir. 1999) (noting this point), overruled on other grounds by Rotella v. Wood, 528 U.S. 549 (2000).  Second, and as was much-discussed during the September 2023 oral argument --- relatively little discovery has in fact been taken in this case. Few witnesses, for example, have been deposed.  Indeed, it appears that only around 1/5 of the police officers involved in the June 2017 pursuit have sat for depositions in this case. Moreover, even if a great deal of discovery had been undertaken, the Court of Appeals has held that "substantial time devoted to the case" and "expense incurred by the parties" do not constitute a basis for retaining jurisdiction over a state law claim.  See City of Pittsburgh Comm'n. on Hum. Rels. v. Key Bank USA, 163 F. App'x 163, 166 (3d Cir. 2006) (cleaned up).  Indeed, the Court of Appeals has held that state law claims may appropriately be dismissed even after a great deal of federal court discovery has been undertaken, and late in the federal litigation process.  See, e.g., Annulli, 200 F.3d at 202-03 (affirming District Court decision not to exercise supplemental jurisdiction, when the decision was made "on the eve of trial," and after 1,800 pages of deposition testimony had been taken and after 2,800 pages of documents had been exchanged).